### FIRST STATE BANK OF MISSION et al. v. FERNANDEZ. (No. 7104.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1924. Rehearing Denied March 26, 1924.)

Banks and banking ⚖⟶112—Bank held bound by acts of vice president and liable for proceeds of check misapplied.

Where the vice president of a bank, who acted as financial adviser for a Japanese depositor, applied the proceeds of a check payable to such depositor to the liquidation of a claim due the bank, from the depositor, when the same in fact belonged to the depositor's landlord under a cropping agreement, *held*, the bank was bound by the acts of its agent and liable to the landlord.

Appeal from District Court, Hidalgo County; L. J. Polk, Judge.

Action by J. H. Fernandez against the First State Bank of Mission and others. From the judgment rendered, the named defendant appeals. Affirmed.

D. F. Strickland and W. L. Dawson, both of Mission, for appellant.

Graham, Jones, Williams & Ransome, of Brownsville, for appellee.

SMITH, J. During the year 1921, H. Miyamoto rented 100 acres of land in Hidalgo county from appellee, J. H. Fernandez. The contract was in parol, and obligated the tenant to pay the landlord a rental of one-fourth of the crops raised on the premises, and the latter to make certain advances to the former, which was done, whereby Miyamoto became indebted to Fernandez in a substantial amount. When harvest time came, Miyamoto, with his landlord's consent, entered into an agreement with George A. Arts whereby the latter undertook to market the crop and account to Miyamoto for the proceeds thereof, it being understood between the three, however, that such proceeds should be paid directly to Fernandez, the landlord, and not to Miyamoto, the tenant, so as to secure the former in his share of the crop, and for the advances he had made. This arrangement was carried out in strict accordance with the agreement, except that an item of $1,-007.99, representing the final settlement between Arts and Miyamoto, was not paid to Fernandez. It appears that when this item

accrued Arts wrote his check therefor, payable to Miyamoto, upon the Hidalgo County Bank of Mercedes. Arts handed this check to his agent, Taylor, with instructions to deliver it to Miyamoto, the payee, which seems from the evidence to have been the usual method of making the payments during the season. As a matter of convenience Taylor, instead of delivering the check directly to Miyamoto, left it at the First State Bank of Mission, where Miyamoto kept his banking account. Vice President Flynn, of the latter bank, was a business adviser of Miyamoto, with apparent general authority to collect moneys for him, and sign and indorse checks for him. Miyamoto was a Japanese, unfamiliar with American methods and language, and because of this his alleged relationship to Flynn is easily conceivable. So, when Taylor left the check in question with Flynn, the latter indorsed it and credited it to Miyamoto's account, which was in this way enlarged to an amount sufficient to cover a past due note Miyamoto owed the bank for $877, which amount Flynn thereupon charged off of said account, canceling the note. This left a balance to Miyamoto's credit in the bank of $161. This transaction appears to have been in consonance with Flynn's authority, and with the usual course of his dealings with and for Miyamoto. In due course, then, the Mission bank forwarded the check to the Mercedes bank, on which it was drawn, for collection, but the latter bank, upon Arts' instruction, refused payment and returned the check to the Mission bank. It so happened that Arts had an account at the Mission bank, which, upon return of the check, charged that account with the amount of the check, whose elusive and sinuous course ended thus happily—for the Mission bank. It does not appear from the evidence that Flynn knew of Fernandez's interest in the check or its proceeds, at the time the check was left with Flynn, or at the time the latter indorsed the check and credited it to Miyamoto's account, or at the time Miyamoto's account was charged with the amount of the latter's note to the bank. But Flynn did know of Fernandez's interest in the item before the check was returned to him, unpaid, from the Mercedes bank, and at the time he charged the amount of the check against Arts' account in Flynn's bank. At the time this notice was given Flynn by Fernandez, the agent of the latter, accompanied by Miyamoto, demanded that Flynn pay the amount of the check over to Fernandez, but Flynn refused, and then and consistently thereafter tendered to Fernandez the sum of $161, the amount of Miyamoto's balance at the bank, after that account had been credited with the check and charged with the note heretofore mentioned. Of course in all the transactions mentioned Flynn was act-

---

⚖⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ing for the bank, which was thus bound by his acts.

Fernandez brought this action against both the Mission and Mercedes banks, and also against Arts and Taylor, to recover the amount of the check, and against Miyamoto for a larger amount, alleged to be the balance due on the year's crop and advances. The cause was tried to the court, without a jury, when judgment was rendered in favor of Fernandez against Miyamoto for the balance due on the rental contract, less the amount of the check in controversy, against the Mission bank for the amount of the check, with interest, and in favor of Arts, Taylor, and the Mercedes bank. The trial court filed full findings of fact and conclusions of law. The Mission bank alone has appealed.

In his first, second, third, fourth, and fifth assignments of error appellant questions the existence or sufficiency of the evidence to support certain of the court's findings of fact. We have very carefully examined the whole of the statement of facts, and have concluded that the evidence fully sustains such findings. The case is purely one of fact in which it is shown that the appellant bank, through its vice president, applied the proceeds of the check in controversy to the liquidation of its own claim, and by so doing wrongfully deprived appellee, the rightful owner, of the proceeds of said check. This is all there appears to be in the case. We think the justice of the case has been attained, and, there being no reversible error presented, the judgment is affirmed.